UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PIERRE NANCE,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No. CV 13-4633-DFM<br><br>MEMORANDUM OPINION AND ORDER |

　　　　Plaintiff Pierre Nance ("Plaintiff") appeals from the denial of his applications for Social Security disability benefits. On appeal, the Court concludes that the Administrative Law Judge ("ALJ") did not err when he determined that Plaintiff's impairments did not meet or equal a listing. The Court also concludes that the ALJ properly weighed the opinions of the consulting examiners and properly assessed Plaintiff's residual functional capacity ("RFC"). The ALJ's decision is therefore affirmed and the matter is dismissed with prejudice.

///

///

///

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed applications for Disability Insurance and Supplemental Security Income benefits on November 12, 2010, alleging that he became disabled on October 19, 2005. The ALJ found that Plaintiff had the severe impairments of meniscal tears and chondromalacia following arthroscopic surgeries in 2007 and 2008 on his knees; mild degenerative lumbar disease; asthma; and obesity. The ALJ found that Plaintiff retained the RFC to perform a range of light work but with the following relevant limitations: Plaintiff could sit, stand, and/or walk for four hours out of an eight-hour workday, and Plaintiff must be allowed to have a sit/stand option in which he can alternate positions hourly and perform work either sitting or standing. The ALJ concluded that Plaintiff was not disabled because there was work available in significant numbers in the national and regional economy which he could perform. Administrative Record ("AR") 9-21.

## II.

## ISSUES PRESENTED

The parties dispute whether the ALJ erred in: (1) not considering whether Plaintiff meets or equals listing 1.03 at step three of the sequential evaluation process; (2) weighing the opinions of the consultative examining physicians; and (3) assessing Plaintiff's RFC and posing a hypothetical question to the vocational expert ("VE"). See Joint Stipulation ("JS") at 2-3.

## III.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g);

Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

## IV.

## DISCUSSION

### A. The ALJ Properly Determined That Plaintiff's Impairments Do Not Meet or Equal Listing 1.03

Plaintiff contends that the ALJ erred by failing to consider whether, at step three of the sequential evaluation process, Plaintiff's impairments meet or equal Listing 1.03. JS at 3-10.

At step three of the sequential evaluation process, an ALJ considers whether an applicant has an impairment or combination of impairments that meet or medically equal an impairment included in the federal regulations' listing of disabling impairments. If the claimant's impairment matches or is "equal" to one of the listed impairments, he qualifies for benefits without further inquiry. 20 C.F.R. §§ 404.1520(d),  416.920(d); Sullivan v. Zebley, 493 U.S. 521, 525 (1990). The claimant bears the burden of proving that he has an impairment that meets or equals the criteria of a listed impairment. Burch v.

Barnhart, 400 F.3d 676, 683 (9th Cir. 2005) ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence."); Zebley, 493 U.S. at 530 ("For a claimant to show that his impairment matches a Listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").

Listing 1.03 requires evidence of "reconstructive surgery or surgical arthrodesis of a major weight bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.03.[1] The regulations generally define "ineffective ambulation" as "having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. pt. 404, subpt. P, App. 1, § 1.00B2b(1). An example of ineffective ambulation includes "the inability to walk a block at a reasonable pace on rough or uneven surfaces." Id.

The ALJ specifically indicated that he considered whether Plaintiff's impairments met or equaled Listings 1.02, 1.04, or 3.03. AR 12. He also indicated that Plaintiff's impairments "do not meet or medically the criteria of any medical listing." Id. (emphasis added). The ALJ continued by noting that "[n]o treating or examining physician has recorded findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed

---

[1] "Arthrodesis" is the surgical fixation of a joint by a procedure designed to accomplish fusion of the joint surfaces by promoting the proliferation of bone cells. See Cunningham v. Astrue, No. 11-144, 2011 WL 5103760, at *4 n. 3 (C.D. Cal. Oct. 27, 2011).

impairment." Id.

The ALJ specifically found that none of Plaintiff's impairments met or equaled Listings 1.02, 1.04, or 3.03, but did not consider whether Plaintiff's impairments met or equaled Listing 1.03. AR 12. Plaintiff contends that this failure requires remand. JS at 9-10. An ALJ is required to adequately explain the basis for his determination that an applicant's impairments do not equal a listing. Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990). However, an ALJ is not required to "state why a claimant failed to satisfy every different section of the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990). Accordingly, a well-developed discussion of the factual basis of a claimant's impairments elsewhere in a hearing decision may, under certain circumstances, support an unexplained finding of no medical equivalence at step three. Id. (finding an ALJ's four-page summary of the record an adequate basis for unexplained statement that the applicant's impairments did not meet or equal any listing).

Here, the ALJ recounted over more than six pages his analysis of the record. See AR 12-19. The ALJ reviewed Plaintiff's medical history in detail, including his knee surgeries and the records which indicated that he obtained considerable improvement after the surgeries; Plaintiff's testimony, which he discounted (a finding Plaintiff does not challenge in this appeal); and the examining physician's report, including the observation that Plaintiff had full range of motion in his joints and walked with no apparent discomfort. Id. This review of the evidence supports the ALJ's step three finding under Gonzalez, and the ALJ did not err in failing to explain further his finding that Plaintiff's impairments were not medically equivalent to any listed impairments. See Howard ex. rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (finding that an ALJ is not required to discuss every piece of evidence in the record in reaching a disability determination). The ALJ provided ample

specific and legitimate reasons, supported by substantial evidence in the record, for finding that Plaintiff did not meet or equal a listing.

More specifically, Plaintiff argues that the ALJ should have found that his knee impairments meet or equal Listing 1.03 because (1) he had arthroscopic surgery on his left knee in 2007 and on his right knee in 2008; and (2) he meets the definition of an inability to ambulate effectively because the medical evidence establishes that he cannot walk a block at a reasonable pace on rough or uneven surfaces. JS at 5.

This argument is unpersuasive. As an initial matter, Plaintiff has provided no proof that the arthroscopic surgeries on his knees involved reconstruction or surgical arthrodesis, as required by Listing 1.03.[2] It appears from the record that Plaintiff's arthroscopic knee surgeries were minimally invasive. See, e.g., AR 523-28, 818-20.

Second, the record shows that Plaintiff's knee surgeries were generally successful in treating his knee impairments. For example, seven months after his second knee surgery, it was reported that Plaintiff had made "excellent progress" and he reported "overall improvement." AR 531, 535. Such successful results are a basis for finding that Plaintiff does not meet Listing 1.03. See, e.g., Yanez v. Astrue, 252 F. App'x 792, 793 (9th Cir. 2007) (concluding that claimant failed to demonstrate he met the criteria for Listing 1.03 where his knee surgery had been successful).

Finally, Plaintiff has not demonstrated that he has an inability to ambulate effectively for a period lasting at least 12 months. Plaintiff argues that the April 2008 report from the worker's compensation agreed medical

---

[2] Knee arthroscopy is "surgery that uses a tiny camera to look inside [the] knee. Small cuts are made to insert the camera and small surgical tools into [the] knee for the procedure." <http://www.nlm.nih.gov/medlineplus/ency/article/002972.htm>.

examiner, Dr. David B. Pechman, indicates that he cannot walk on uneven surfaces, and he therefore meets the definition of an inability to ambulate effectively. JS at 6 (citing AR 926). However, it appears from a review of Dr. Pechman's opinion that he was simply recording the various daily activities Plaintiff reported that he was able to perform. See AR 926-27. Thus, this alleged inability to walk on uneven surfaces seems to be merely a self-reported limitation and not an actual medical opinion provided by Dr. Pechman. Moreover, Dr. Pechman's report appears to pre-date one of Plaintiff's knee surgeries, a surgery which records show resulted in "overall improvement" and "excellent progress."

      Plaintiff also cites to a few medical records in which his treatment providers noted that he walked with an unsteady gait or used a cane in support of his contention that he cannot ambulate effectively. See JS at 6 (citing AR 235, 433, 435, 468). Like Dr. Pechman's report, the majority of these records are from before one or both of Plaintiff's arthroscopic surgeries, which records indicate helped alleviate the pain in his knees, as discussed above. See AR 531, 535. In addition, more recent records, such as the opinion of the consultative examining physician, indicate that Plaintiff was able to walk with a "slow but normal gait." See AR 204. Citing pre-surgical medical records which indicate some intermittent difficulty in walking is insufficient to demonstrate that Plaintiff had an inability to ambulate effectively for at least 12 months.

      Moreover, even if the Court assumes that the record establishes that Plaintiff is still, post-surgeries, unable to walk on uneven terrain, such a limitation by itself does not establish an inability to ambulate effectively for purposes of Listing 1.03. See, e.g., Moreno v. Astrue, 444 F. App'x 163, 164 (9th Cir. 2011) (concluding that ALJ's RFC determination that limited claimant to walking on even terrain did not establish inability to ambulate effectively under the listings); Perez v. Astrue, 831 F. Supp. 2d 1168, 1176

(C.D. Cal. 2011) (deciding that medical opinion that claimant should not walk on uneven terrain did not prove an inability to ambulate effectively); Hernandez v. Colvin, No. 12-0773, 2013 WL 1401368, *4 (C.D. Cal. Apr. 4, 2013) (concluding that ALJ's RFC determination that plaintiff cannot walk on uneven terrain "by itself does not establish an inability to ambulate effectively for purposes of the listings").

When the Court considers the record as a whole, Plaintiff has not met his burden of demonstrating that his impairments met or equaled the criteria of Listing 1.03. See Bowen v. Yuckert, 482 U.S. 137, 145-152 (1987) (placing burden on claimant to produce evidence that his impairment meets a listing). The ALJ reviewed all of the medical evidence in detail and correctly found, at step three of the sequential analysis, that Plaintiff's impairments do not meet or equal one of the listed impairments. Plaintiff is not entitled to a reversal of the ALJ's decision on this basis.

**B.     The ALJ Properly Evaluated the Consultative Examiners' Findings**

Plaintiff contends that the ALJ erred in evaluating the opinions of the consultative examining physicians. More specifically, Plaintiff argues that, although the ALJ accepted some aspects of the opinions of Dr. Pechman and of the consultative examining physician, Dr. Yakov Treyzon, he failed to expressly state whether he accepted or rejected Dr. Pechman's opinion that Plaintiff is unable to walk on uneven surfaces and Dr. Treyzon's opinion that Plaintiff is moderately restricted with respect to his depth perception and visual acuity. JS at 15-16.

The ALJ extensively addressed the opinions of Drs. Pechman and Treyzon and reasonably gave them significant, although not controlling, weight. See AR 17 (citing AR 198-205, 925-37). The ALJ declined to give Dr. Pechman's opinion controlling weight because he determined that Dr. Pechman's sitting, standing, and walking limitations were unsupported by the

medical record and undermined by Plaintiff's conservative treatment history. AR 17. As noted by the ALJ, objective diagnostic evidence of Plaintiff's back and knees indicated "mild findings" after Plaintiff's knee surgeries. Id. The ALJ also noted that, since Plaintiff had his knee surgeries, the medical record reflected only conservative treatment. AR 17-18. These are legitimate reasons for the ALJ to refuse to give controlling weight to Dr. Pechman's opinion. See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (finding that ALJ properly refused to fully credit treating physician's opinion where the functional limitations were undermined by improvement in the claimant's condition and a conservative course of treatment). Furthermore, as noted above, Dr. Pechman's assessment that Plaintiff was unable to walk on uneven surfaces appears to have been based entirely on Plaintiff's self-reported limitations. Because the ALJ found Plaintiff to be not fully credible, a finding which Plaintiff does not challenge, the ALJ was not required to include any limitations in the RFC assessment which were based upon Plaintiff's own discredited self-reports. See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) (holding that a "physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted" (internal quotation marks omitted)).

The ALJ did not give Dr. Treyzon's opinion controlling weight because he determined that Dr. Treyzon's sitting and standing limitations and his assessment that Plaintiff's work schedule would be disrupted two to three times a week was not supported by Plaintiff's treatment records or the diagnostic evidence. AR 17. An ALJ may properly take into account whether an examining physician's opinion is supported by the record when determining the weight to give to that opinion. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (stating that an ALJ "need not accept the opinion of any

physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings"). Here, as discussed in detail above, the medical evidence generally showed unremarkable findings and marked improvement after Plaintiff's knee surgeries, which is at odds with Dr. Treyzon's findings of significant functional limitations.

Furthermore, the ALJ did not err in failing to expressly discuss Dr. Pechman's limitation on walking on uneven surfaces and Dr. Treyzon's finding that Plaintiff had some mild visual limitations. An ALJ may properly rely upon only selected portions of a medical opinion while rejecting other parts, Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir. 1989), but such reliance must be consistent with the medical record as a whole. Edlund v. Massanari, 253 F.3d 1152, 1159 (9th Cir. 2001). "It is not necessary to agree with everything an expert witness says in order to hold that his testimony contains 'substantial evidence.'" Magallanes, 881 F.2d at 753 (quoting Russell v. Bowen, 856 F.2d 81, 83 (9th Cir. 1988)). Here, the ALJ properly evaluated the opinions of Drs. Pechman and Treyzon in detail and adopted those limitations he found credible and supported by the medical evidence. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary.").

Even assuming arguendo that the ALJ erred in failing to discuss Dr. Pechman's limitation on walking on uneven surfaces and Dr. Treyzon's finding that Plaintiff had some visual limitations, any error was harmless. When provided with a hypothetical question which included the limitations found in the ALJ's RFC assessment, the VE testified that there were light, unskilled jobs available in the regional and national economy which Plaintiff could perform, even after erosion of the job base for a sit/stand option, such as cashier II and ticket taker. See AR 20, 62-67. Plaintiff has failed to explain how

inclusion of a limitation on walking on uneven ground or inclusion of some mild visual restrictions would have any effect on his ability to perform the jobs identified by the VE. Even if the ALJ had fully credited the opinions of Drs. Pechman and Treyzon (both of whom ultimately concluded that Plaintiff could perform light work), this would not have affected the ALJ's ultimate determination that Plaintiff was not disabled.[3] Therefore, any possible error was harmless, and Plaintiff is not entitled to relief. See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) ("We have long recognized that harmless error principles apply in the Social Security Act context.") (citing Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054 (9th Cir. 2006)).

### C. The ALJ Properly Assessed Plaintiff's RFC and Posed a Proper Hypothetical to the VE

Plaintiff argues that the ALJ's RFC assessment is erroneous because he did not include the limitations found by Drs. Pechman and Treyzon, as discussed in Section B. Plaintiff also contends that the ALJ improperly questioned the VE because the hypotheticals posed to the VE did not include these limitations. JS at 21-23.

Plaintiff alleges that the limitations opined by Drs. Pechman and Treyzon would have "significant vocational ramifications," JS at 22, but fails to offer any evidence to demonstrate how these alleged limitations would have had any effect on his ability to perform any work-related functions. This is

---

[3] The ALJ inquired whether needing a cane to ambulate would affect the VE's testimony that Plaintiff could perform the jobs of cashier II and ticket taker; the VE responded that it would not. AR 64. The DOT listings for these jobs, which were implicitly adopted by the VE, AR 63-64, do not contain any vision-related requirements implicated by Plaintiff's mild limitations. See DICOT 211.462-010, 1991 WL 671840; DICOT 344.667-010; 1991 WL 672863.

clearly insufficient to demonstrate that the ALJ's RFC assessment was in error. See Burch, 400 F.3d at 684 (upholding ALJ's RFC assessment because claimant "has not set forth, and there is no evidence in the record, of any functional limitations as a result of her obesity that the ALJ failed to consider"). Here, the ALJ extensively reviewed the medical evidence, including the opinions of Drs. Pechman and Treyzon, in assessing Plaintiff with the RFC to perform a range of light work with some functional limitations. AR 15-18. Furthermore, the ALJ properly posed to the VE hypothetical questions which included only those limitations found by the ALJ to be credible and supported by substantial evidence in the record. AR 62-67. See Bayliss, 427 F.3d at 1217; Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). The ALJ therefore appropriately relied upon the VE's testimony in determining that Plaintiff was capable of performing the jobs of cashier II and ticket taker. See Bayliss, 427 F.3d at 1217 (where the hypothetical the ALJ posed to the VE contained all of the limitations found credible and supported by substantial evidence, the "ALJ's reliance on testimony the VE gave in response to the hypothetical therefore was proper"). Plaintiff is therefore not entitled to relief on this claim of error.

## V.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: July 8, 2014

DOUGLAS F. McCORMICK
United States Magistrate Judge